Kerri Sue Hass CULVER, Appellant,

v.

Billy Ray CULVER, Appellee.

No. 06–10–00112–CV.

Court of Appeals of Texas,
Texarkana.

Submitted: Oct. 3, 2011.

Decided: Dec. 15, 2011.

Kerri Sue Hass Culver, Mineola, pro se.

Jim Wheeler, Wood County Dist. Atty., Thomas J. Burton, Special Asst. Dist. Atty., Quitman, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Kerri Sue Hass Culver has filed a motion for rehearing.[1] This opinion on re-

hearing is issued as a substitute for our original opinion issued October 21, 2011.

With an action for divorce apparently pending,[2] Billy Ray Culver sought and obtained a protective order against his wife, Kerri. Kerri appeals the protective order, employing nine points of error. We affirm the trial court's order based on our nine principal holdings:

(1) Issuing the protective order was not an abuse of discretion,

(2) refusing Kerri's motion for discovery was not error,

(3) denying Kerri's motions for continuance was not error,

(4) this case is not reversible for ineffective assistance of counsel,

(5) this case is not subject to the *Brady*[3] rule,

(6) Kerri has not established misconduct by opposing counsel,

(7) Kerri's second motion to recuse did not trigger mandatory referral,

(8) failing to file findings of fact and conclusions of law was not reversible error, and

(9) we cannot reverse the trial court without reversible error.

Billy filed an application for a protective order August 30, 2010, alleging Kerri had committed family violence and would likely commit family violence in the future. Billy requested an order that Kerri not commit

1. Kerri's request for an en-banc rehearing is overruled as moot. As a court of appeals with three justices, every opinion of this Court is en banc.

2. The record indicates a divorce was pending, but does not specify the status of the divorce proceeding. A protective order issued in the context of a divorce proceeding cannot be appealed until the divorce is final. *See* Tex. Fam.Code Ann. § 81.009(b) (West 2008). The application in this case was not filed as a motion in a suit for dissolution of a marriage.

Whether this section applies in this case has not been assigned for our review by the parties. This Court has held protective orders rendered in separate cause numbers and treated entirely separate from any divorce proceedings are not governed by Section 81.009. *See Davis v. Davis*, No. 06–07–00059–CV, 2007 WL 1574278, 2007 Tex.App. LEXIS 4298 (Tex.App.-Texarkana June 1, 2007, no pet.) (mem. op.).

3. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

family violence against Billy or Billy's parents; not communicate with any of those three; not go within 200 yards of any of the three; not go within 200 yards of the residence, workplace, or school of any of those three; and not stalk any of them. The application was accompanied by an affidavit alleging facts constituting family violence. The trial court issued an ex parte temporary protective order and set a hearing on the application for September 10, 2010. Notice of the application for protective order was served on Kerri August 31, 2010. On September 8, 2010, Kerri filed a general denial, a motion for discovery, and a motion for continuance.

The trial court's hearing began September 10, 2010, with Kerri representing herself. Billy's application for a protective order was prosecuted by the District Attorney's Office on Billy's behalf. In the middle of the hearing, Kerri made an oral motion to recuse the trial judge, alleging bias. The district attorney argued the motion to recuse was facially invalid and frivolous, as well as orally requesting an extension of the ex parte temporary protective order. The trial court refused to recuse, suspended the hearing, and referred the matter to an administrative judge. The administrative judge found

the recusal motion to be untimely and facially insufficient.

The hearing resumed September 28, 2010, with Kerri represented by attorney Jeff Fletcher, whom she had retained the day before. The trial court orally pronounced that it was granting a standard protective order and orally admonished Kerri not to have contact with her husband. The original protective order signed by the trial court was a boilerplate check-the-box form, but all of the boxes were left blank except the box prohibiting possession of firearms.

The district attorney filed a motion for judgment nunc pro tunc, which certifies that a copy was delivered to Kerri. The trial court rendered a judgment titled "nunc pro tunc" September 29, 2010,[4] which additionally prohibited Kerri from committing family violence against; communicating with; going within 200 yards of; going within 200 yards of the residence, workplace, or school of; and from stalking Billy and Billy's mother. This protective order had the same expiration date as the original temporary protective order—September 27, 2012. On October 1, 2010, Kerri filed a motion for new trial[5]

---

**4.** In her motion for rehearing, Kerri alleges that, because the two judgments filed September 28 and 29, 2010, each contain the same date and signature, the September 29 judgment is "merely a photocopy" of the September 28 judgment and does not have "an original signature by the trial judge." Kerri claims that the October 28 modified judgment was entered "because the trial court noticed it had not actually signed the September 29, 2010 modified judgment." The two judgments filed September 28–29 are both dated September 28 and contain identical times and signatures. The two judgments, however, contain substantive differences. All of the boxes in Section 4 of the judgment filed September 28, except the box prohibiting possession of firearms, were left blank. The various boxes were checked in the judgment filed

September 29. The record contains a motion for judgment nunc pro tunc filed by Billy September 29. The judgment filed September 29 is not merely a photocopy of the September 28 judgment. Kerri did not complain about this issue before our original opinion in this case. In fact, Kerri's appellant's brief contains the following statement: "On September 29, 2010, one day later, the trial court entered a Nunc Pro Tunc Order in the same cause without holding a hearing." Kerri has waived any complaint concerning this irregularity. Besides, this issue would have no effect on any issue argued on appeal.

**5.** The motion for new trial did not contain an accompanying affidavit. The record contains an order setting a hearing on the motion for new trial to be held October 21, 2010. Nei-

and was personally served with a copy of the judgment signed September 27, 2010. On October 20, 2010, Kerri filed a second request for recusal and a motion for continuance. On October 25, 2010, Kerri filed a notice of appeal. On October 28, 2010,[6] the trial court rendered a second judgment, denoted "nunc pro tunc," adding Bill's father's workplace to the list of places Kerri was prohibited from going near. On November 8, 2010,[7] the trial court held a hearing, during which the district attorney acknowledged Kerri did not have notice and was not present and at which the trial court clarified that Fletcher had been appointed Kerri's attorney in a criminal proceeding, but was not appointed to represent her in the protective-order case.

While her appeal was pending, Kerri filed a petition for writ of mandamus, which this Court denied. In denying mandamus relief, we held that the two judgments "nunc pro tunc" corrected judicial mistakes but, because the trial court still had plenary jurisdiction, were modified judgments. *In re Culver*, No. 06–11–00028–CV, 2011 WL 1136788, 2011 Tex. App. LEXIS 2236 (Tex.App.-Texarkana Mar. 29, 2011, orig. proceeding) (mem. op.).

## 1. Issuing the Protective Order Was Not an Abuse of Discretion

In two of her points of error, Kerri complains that the evidence is insufficient to support the protective order.[8]

■ Kerri argues the evidence is factually insufficient because the 9–1–1 tape and police reports "establishe[s] the opposite of a vital fact." The 9–1–1 recording and police reports were not admitted into evidence.[9] Kerri argues that Billy admit-

---

ther the docket sheet, nor anything in the record indicates any hearing was held that date.

**6.** Because Kerri had filed a motion for new trial, the trial court's plenary jurisdiction had been extended. Tex.R. Civ. P. 329b.

**7.** The front page of the reporter's record of this hearing specifies that it occurred September 28, 2010. The third page of the reporter's record and the docket sheet, though, specify that this hearing occurred November 8, 2010.

**8.** Kerri argues she is a disabled person living on a fixed income. Kerri alleges Billy left her while she was pregnant, the couple was over $20,000.00 in debt, the couple's land was in foreclosure, and their residence's electricity was cut off. While we sympathize with Kerri's claimed hardships, we note these facts are not in the record. On cross-examination, Billy admitted he had told the police that Kerri had a disability, receives "SSI disability," and had not been taking her medication at the time of the Enchanted Lakes incident, the incident in which Kerri was driving, Billy was walking, and Kerri got aggressive with the vehicle. Although Kerri made some of the remaining factual statements on the record, Kerri was not testifying at the time.

**9.** Kerri attempted to enter into evidence a "copy of the 911 recording" (presumably from the Enchanted Lakes incident) and Billy objected, stating, "[I]t's not properly authenticated." The trial court sustained Billy's objection. Kerri also attempted to have Billy read the police report. The trial court sustained the State's objection that the report was hearsay. To challenge the exclusion of evidence, a party must: (1) attempt to introduce the evidence; (2) if an objection is made, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible, make a record, either through an informal offer of proof or a formal bill of exceptions, of the evidence the party desires admitted. *See* Tex.R.App. P. 33.2; Tex.R. Evid. 103; *see also Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex.App.-Dallas 2008, no pet.); *Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Kerri failed to specify to the trial court why both pieces of evidence were admissible. Kerri

ted he had not been placed in fear of his life and that Kerri had plenty of time to hurt him before the arrival of the police. Billy, though, was not required to prove he was placed in fear of his life.[10] The statutory definition of "family violence" required only that Billy was placed in fear of physical harm or bodily injury, or that an assault had occurred.

To be entitled to a protective order under Title 4 of the Texas Family Code, Billy was required to prove family violence had occurred and would likely occur in the future. TEX. FAM.CODE ANN. § 85.001 (West 2008). The Texas Family Code defines "family violence" as

> (1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;

> (2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or household; or

> (3) dating violence, as that term is defined by Section 71.0021.

TEX. FAM.CODE ANN. § 71.004 (West 2008).

■ Because a protective order is in the nature of a civil injunction,[11] this Court has held a protective order should be reviewed for an abuse of discretion. *See In re Epperson*, 213 S.W.3d 541, 542–43 (Tex. App.-Texarkana 2007, no pet.) (noting split of authority). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Billy introduced sufficient evidence that Kerri committed an act intended to result in placing Billy in fear of imminent physical harm, bodily injury, or assault. Billy testified[12] concerning an argument he and

also did not make an offer of proof or file a formal bill of exceptions. Although Kerri was proceeding pro se at the time of the objection, it is well-established that a pro se litigant "must comply with all applicable procedural rules" and is held to the same standards as a licensed attorney. *Weaver v. E–Z Mart Stores, Inc.*, 942 S.W.2d 167, 169 (Tex.App.-Texarkana 1997, no pet.). At the second hearing, Kerri's counsel—who had one day to prepare—attempted to have Billy authenticate the 9–1–1 recording by reading the date and cause number printed on it. The district attorney objected again, and the trial court sustained the objection. Again, the trial court was not provided with reasons why the evidence was admissible, and no attempt to make an offer of proof or file a bill of exceptions was made. Any error in these rulings has not been preserved for appellate review.

10. Kerri argues Billy was required to prove he was placed in fear of his life, citing *Thompson v. Thompson–O'Rear*, No. 06–03–00129–

CV, 2004 WL 1243080, 2004 Tex.App. LEXIS 5033 (Tex.App.-Texarkana June 8, 2004, no pet.). In that case, this Court did not hold fear of death was required. In *Thompson*, this Court held the evidence did not establish the acts alleged "reasonably place[d] one in fear of imminent physical harm or bodily injury." *Id.* As discussed below, the evidence is sufficient in this case, and *Thompson* is distinguishable from this case.

11. *See* TEX. FAM.CODE ANN. § 88.002(5) (West 2008).

12. Kerri alleges "[t]he only evidence that Mr. Culver offered was his testimony which was hearsay." " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d).

Kerri had "at the house she owns in Enchanted Lakes" concerning "her involvement in dog rescue and it consuming our life completely." Billy left and started walking "towards Mineola" on the "blacktop road back towards 69." Billy testified Kerri was "hysterical" and followed him in a car. According to Billy, Kerri "started basically trying to run me off the road to make me stop and then she came close to hitting me a couple of times." Billy testified that Kerri ran him into the ditch several times and that he had to walk into the woods to get around her car. When he was able to get a cell phone signal, Billy called the police. Billy stayed on the phone with the police dispatcher until the police arrived approximately forty-five minutes later. When asked, "Were you in fear that you were going to be struck with that vehicle," Billy responded, "At several times, yes, sir." Billy admitted, on cross-examination, the police did not arrest Kerri, but merely told her to go home and then gave Billy a ride to his parents' house. When asked, during cross-examination at the second hearing, "[W]e can agree that if she wanted to run over you with her car, she could have gotten that done that day, couldn't she?" Billy responded, "I suppose she could." The trial court could have reasonably concluded Kerri's actions caused Billy to fear imminent bodily injury.

Billy also introduced evidence that Kerri had assaulted him. This Court has held "[t]he definition of assault is the same, whether in a civil or criminal trial." *Rogers v. Peeler*, 146 S.W.3d 765, 769 (Tex. App.-Texarkana 2004, no pet.); *see Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n. 4 (Tex.2010). A person commits assault under the Texas Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another, intentionally or knowingly threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact when the person knows or should reasonably believe the other will regard such contact as offensive or provocative. TEX. PENAL CODE ANN. § 22.01 (West 2011).

On August 18, 2010,[13] Kerri showed up at Billy's parents' house and entered uninvited through the back door. When asked to leave, Kerri did leave, but returned approximately ten minutes later. Kerri entered the house a second time, "chased [Billy] around the dining room table," and then chased Billy into the back yard. Billy called the police. Billy testified that, on this occasion, Kerri threw her telephone, which hit him "in the back shoulder." Billy testified the phone caused "physical pain." Billy testified, during cross-examination, that he told the police that he did not want Kerri to go to jail, that he did not want to file a report, and that he just wanted Kerri to leave. The fact that Billy suffered only physical pain does not prevent the act from being an assault. The term "bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011). Further, Kerri should have known Billy would regard being hit in the shoulder by a telephone as offensive. The trial court could have reasonably concluded Kerri assaulted Billy.

Billy also introduced sufficient evidence for the trial court to conclude family violence would occur in the future. Billy testified he had been stalked by Kerri, who

13. Kerri alleges she went to the house to retrieve a trailer Billy had taken without her permission. Kerri claims when she contacted the police to report the stolen trailer, the police instructed her to contact Billy since it was registered to him. Kerri did not testify at the hearing. Billy testified he took a trailer August 17, 2010, because it "contained personal property of mine."

had followed Billy to a mall in Sulphur Springs,[14] where they argued. When asked, since the August 18 incident, the number of times Kerri "has appeared uninvited around [him]," Billy testified that "[t]hey are too numerous" and explained:

> She drives by at all hours of the day and night. She leaves messages, telephone calls. I never know if she's going to walk up behind me in any store.

The trial court could have reasonably concluded family violence was likely to occur in the future.

The trial court could reasonably conclude Billy was testifying truthfully. The credibility of witnesses is within the sole province of the fact-finder. *Walker & Assocs. Surveying v. Austin,* 301 S.W.3d 909, 916 (Tex.App.-Texarkana 2009, no pet.). The trial court did not abuse its discretion in finding that family violence had occurred and would likely occur in the future. We overrule Kerri's points of error attacking the sufficiency of the evidence.

### 2. Refusing Kerri's Motion for Discovery Was Not Error

■ In one point of error, Kerri contends the trial court erred in failing to grant her motion for discovery. Kerri filed a motion for discovery two days before the hearing in which she requested that Billy provide her with "all evidence including audio, video, photographs, written reports, etc. that he intends to enter as evidence in the above referenced cause." The record does not contain any ruling on this motion.[15]

Kerri has not directed this Court to any specific provision for discovery in proceedings relative to protective orders, which are placed on an extremely expedited schedule. An ex parte temporary protective order expires within twenty days (although it may be "extended for additional 20–day periods"), and Section 84.001 provides that a hearing on an application for a protective order should occur within fourteen days. TEX. FAM.CODE ANN. §§ 83.002, 84.001 (West 2008).

In the absence of a specific provision, the general discovery provisions of the Texas Rules of Civil Procedure would apply. *See* TEX.R. CIV. P. 190–215.6. The record does not contain any court order modifying the default deadlines for discovery or any request for such order. Assuming discovery is available, given the expedited schedule and lack of a specific discovery provision granting discovery in the context of protective orders, the trial court did not err in failing to rule on Kerri's motion for discovery. Without a request and showing of good cause to modify the default discovery deadlines, Kerri's motion for discovery was not timely. A request for production must be filed thirty days before the end of the discovery period, which ends thirty days before trial. *See* TEX.R. CIV. P. 190.3, 196.1. While we recognize this deadline was impossible to comply with under the expedited trial schedule for applications for protective orders, this deadline applies in the absence of a court order modifying the default deadlines. Since the record does not contain any such court order, agreement, or other modification of the discovery deadlines, Kerri's motion was not timely. We overrule Kerri's point of error regarding the motion for discovery.

---

**14.** When Billy noticed Kerri following him, he contacted the sheriff's department, who escorted Billy out of town until it appeared Kerri was "headed back to Mineola." Kerri, though, later appeared at the mall.

**15.** Nothing shows that this motion was ever brought to the attention of the trial court.

*3. Denying Kerri's Motions for Continuance Was Not Error*

■ In her first and second points of error, Kerri also complains about the trial court denying her motions for continuance. In her first, second, and fourth points of error, Kerri claims the trial constituted "trial by ambush." Kerri filed her first motion for continuance two days before the first hearing. In this motion, Kerri alleges that she had filed "open records request[s] with multiple law enforcement agencies" and sufficient time had not passed to obtain the documents. The day before the hearing was scheduled to resume following disposition of Kerri's motion to recuse, Kerri filed a second motion for continuance that alleged she had "hired counsel today to represent her in this matter and counsel has not and will not have adequate time to prepare for trial before tomorrow." [16]

■ We review the decision to grant or deny a motion for continuance for an abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986); *In re A.D.A.*, 287 S.W.3d 382, 387 (Tex.App.-Texarkana 2009, no pet.). The Texas Rules of Civil Procedure state that a continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex.R. Civ. P. 251. Neither motion for continuance was accompanied by an affidavit, and there is no indication in the record that Billy consented to either motion. The trial court did not abuse its discretion in denying the motions for continuance. *See In re R.A.L.*, 291 S.W.3d 438, 448 (Tex.App.-Texarkana 2009, no pet.).

*4. This Case Is Not Reversible for Ineffective Assistance of Counsel*

■ The doctrine of ineffective assistance of counsel does not apply to civil cases where there is no constitutional [17] or statutory right to counsel. *See, e.g., McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex.App.-Dallas 2006, no pet.); *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 343 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *cf. In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003) ("[T]he statutory right to counsel in parental-rights termination cases embodies the right to effective counsel."). Kerri has not provided this Court with any authority that there is a right to effective assistance of counsel in a protective order case—and we are not aware of any. We overrule this point of error.

---

**16.** At the time this motion for continuance had been filed, approximately twenty-eight days had passed since her original notice of the application for a protective order and twelve days had passed since she received notice of the date trial would resume. To the extent Kerri's newly retained counsel was not prepared for trial, the fault lies with Kerri choosing not to retain counsel until the eve of the hearing.

**17.** "The Sixth Amendment grants an indigent criminal defendant the right to counsel," but does not apply to civil cases. *Turner v. Rogers*, —— U.S. ——, 131 S.Ct. 2507, 2510, 180 L.Ed.2d 452 (2011). In a civil case, the right to counsel under the Due Process Clause is determined by conducting an analysis to determine "whether the 'specific dictates of due process' require appointed counsel." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In making this determination, courts should consider the *Eldridge* factors, which include:

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Eldridge*, 424 U.S. at 335, 96 S.Ct. 893; *see Turner*, 131 S.Ct. at 2510.

### 5. *This Case Is Not Subject to the* Brady *Rule*

■ In two points of error, Kerri argues that the State withheld exculpatory evidence and cites *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Under *Brady,* a prosecutor in a criminal proceeding has an affirmative duty to disclose exculpatory evidence when a defendant timely files a *"Brady"* motion. *Id.* Kerri did not file a *"Brady"* motion. Further, Kerri has not provided this Court with any authority that *Brady* is applicable to a protective order proceeding—a civil proceeding—and we are not aware of any. We overrule these points of error.

### 6. *Kerri Has Not Established Misconduct by Opposing Counsel*

■ In two points of error, Kerri complains that the district attorney's office engaged in prosecutorial misconduct and "trial by ambush." Other than citing criminal cases and Rule 806 of the Texas Rules of Evidence,[18] Kerri has not provided this Court with any authority concerning this issue.[19] As noted above, this case is a civil proceeding.

■ To the extent the district attorney's office may have had a duty to see that justice was done, Kerri has failed to allege any facts constituting prosecutorial misconduct. Kerri argues "[n]ot only did the prosecutor know the state's witness was committing perjury, the prosecutor made a barrage of allegations against Appellant...." Kerri also complains about the district attorney's characterization of her conduct as "bizarre and dangerous"

during his rebuttal closing argument. During closing argument, the district attorney argued there had been "several violations of Texas law" and "domestic violence in the past." No specific allegations were made. In its rebuttal closing argument, the prosecutor's argument was as follows, in its entirety:

> Ms. Kerri Sue Hass' behavior is bizarre and dangerous, from filing a motion to dismiss a divorce to persistently acting in contempt of this court, and finally making a threat, you're going to hurt somebody. Mr. Culver is exercising his legal right to bring an action before this court and he's been threatened for it.
>
> And her behavior in stalking him, showing up at her mother-in-law's house uninvited, interfering with 911 calls, using a car in an aggressive manner, and persistently violating this court order indicates she is a danger and should not have firearms, and we shouldn't reach the point if she wanted him hurt, then he would have been in a ditch.
>
> If we want him protected and not to be the subject of this threat and actually be hurt, then we need the protective order. That's the logic. We have domestic violence in the past. There's a real threat that it will happen in the future. The State moves for protective order.

While the district attorney's choice of words—"bizarre and dangerous"—are harsh, the choice does not constitute error. We note no objection was made to the district attorney's argument.[20] Further,

---

18. Kerri's citation is "TRCP 806." The abbreviation TRCP generally refers to the Texas Rules of Civil Procedure. Rule 806 of the Texas Rules of Civil Procedure concerns a claim of improvements in a trespass-to-try-title action. *See* Tex.R. Civ. P. 806. We assume Kerri is referring to Rule 806 of the

Texas Rules of Evidence. *See* Tex.R. Evid. 806.

19. This issue could be overruled as inadequately briefed. *See* Tex.R.App. P. 38.1(h).

20. To establish that an improper jury argument is reversible error, an appellant must

"[c]ounsel should be allowed wide latitude in arguing the evidence and reasonable inferences to the jury." *Anderson v. Vinson Exploration*, 832 S.W.2d 657, 667 (Tex. App.-El Paso 1992, writ denied).

■ Kerri also takes issue with the reference to past domestic violence. As explained above, the statutory definition of family violence does not require actual physical injury. The district attorney's statement was a reasonable interpretation of the evidence. The district attorney's reference to the motion to dismiss the divorce may have referred to facts not admitted into evidence.[21] This reference does not, however, constitute prosecutorial misconduct, and no objection was made to this statement. The error, if any, has not been preserved for appellate review. TEX. R.APP. P. 33.1. Other than the divorce reference, the prosecution's argument consists of a permissible interpretation of the evidence presented at the hearing.

■ Kerri's remaining complaint concerns the trial court sustaining Billy's evidentiary objection to her use of the 9–1–1 recording of July 29, 2010. As discussed above, any error concerning the exclusion of these pieces of evidence has not been preserved for review.

We overrule Kerri's points of error alleging prosecutorial misconduct.

### 7. Kerri's Second Motion to Recuse Did Not Trigger Mandatory Referral

■ Kerri also complains that the trial court failed both to refer her second motion to recuse to an administrative judge and to refrain from making any further rulings while the motion was pending.[22] Kerri's second motion to recuse, which was not verified, was filed October 20, 2010. On October 28, 2010, the trial court signed a second modified judgment. Kerri alleges the trial court failed to refer the second recusal motion to an administrative judge and refused to refrain from making any additional rulings while the motion was pending, rendering the modified judgment signed October 28, 2010 void.[23] Under Rule 18a, a trial court is required to either recuse or refer the motion to an administrative judge. TEX.R. CIV. P. 18a(c), (d). However, a motion requesting recusal must be filed at least ten days before trial and must be verified. TEX.R. CIV. P. 18a(a). The mandatory referral provisions do not come into play when the motion is not filed ten days before trial. *Spigener v. Wallis*, 80 S.W.3d 174, 181 (Tex.App.-Waco 2002, no pet.); *Autry v. Autry*, 646 S.W.2d 586, 588 (Tex.App.-Tyler 1983, no writ). Kerri's second motion to recuse was filed approximately three weeks after the hearing concluded and Kerri has not alleged any exception to this general rule.[24] Further,

prove: (1) an improper jury argument; (2) the improper argument was not invited or provoked; (3) the error was preserved; and (4) "the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court." *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979); *Lone Star Ford, Inc. v. Carter*, 848 S.W.2d 850, 853 (Tex.App.-Houston [14th Dist.] 1993, no writ).

21. Our review of the record reveals no evidence concerning this allegation.

22. Kerri's first motion to recuse was untimely. Out of an abundance of caution, the trial

court referred the first motion to recuse to an administrative judge and refrained from making any further rulings until the first motion to recuse had been disposed of.

23. Unlike disqualification, "the erroneous denial of a recusal motion does not void or nullify the presiding judge's subsequent acts." *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex.1998) (orig. proceeding).

24. Even if Kerri had argued an exception, the motion was not filed as soon as possible after she learned of the "grounds" for recusal. Thus, even if an exception applied, the motion

Kerri's motion was not verified and, thus, did not comply with Rule 18a. *See* Tex.R. Civ. P. 18a. The trial court did not err in failing to refer this unverified and untimely motion to an administrative judge and was not prohibited from making any further rulings.

### 8. Failing To File Findings of Fact and Conclusions of Law Was Not Reversible Error

 Kerri complains that the trial court failed to file findings of fact and conclusions of law. On October 25, 2010, Kerri requested findings of fact and conclusions of law. Although requests for findings of fact and conclusions of law filed before the trial court's modified judgment are premature, Rule 306c provides that such requests shall be deemed filed on the date of, but subsequent to, the judgment. Tex.R. Civ. P. 306c. On December 14, 2010, Kerri filed a notice of past due findings of fact and conclusions of law. "Following a proper request and reminder, it is mandatory for a trial court to make and file findings of fact and conclusions of law." *In re Grossnickle*, 115 S.W.3d 238, 253 (Tex.App.-Texarkana 2003, no pet.). Failing to file findings of fact and conclusions of law was error.

 The error, though, is not reversible. Although "harm to the complaining party is presumed unless the contrary appears on the face of the record," a trial court's "failure to make findings is not harmful error if 'the record before the appellate court affirmatively shows that the complaining party suffered no injury.' " *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (quoting *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 772 (Tex.1989)); *Las Vegas Pecan & Cattle Co. v. Zavala*

*County*, 682 S.W.2d 254, 256 (Tex.1984). When the trial court announces its reasons for its ruling in open court, the appellant's ability to present the appeal is not harmed because there was no need to guess the reasons for the trial court's adverse ruling. *See, e.g., Sagemont Plaza Shopping ex rel. O'Connor & Assocs. v. Harris County Appraisal Dist.*, 30 S.W.3d 425, 427 (Tex. App.-Corpus Christi 2000, pet. denied); *Tex. Workers' Comp. Ins. Fund v. Ashy*, 972 S.W.2d 208, 210–12 (Tex.App.-Beaumont 1998, pet. denied); *Elizondo v. Gomez*, 957 S.W.2d 862, 865 (Tex.App.-San Antonio 1997, writ denied). In this case, the trial court announced its reasons for the ruling in open court, stating that domestic violence had occurred and would likely occur in the future. The trial court's statements on the record clearly provide the basis for its ruling. On appeal, Kerri has not explained how she was prevented from properly presenting the case to this Court. The trial court's error did not result in reversible error. *See* Tex.R.App. P. 44.1.

### 9. We Cannot Reverse the Trial Court Without Reversible Error

 Kerri also asserts that the modified judgments are void. Billy agrees with her, states that Kerri received inadequate notice, and requests this Court reverse the judgments of the trial court.

The trial court rendered judgment September 28, 2010, and then, while it retained plenary jurisdiction, signed two modified judgments, respectively dated September 29, 2010, and October 28, 2010.

Billy assumes, as argued by Kerri, that the "modified judgments" are modifications of a protective order under Chapter

---

would still be untimely. While this case was on appeal, the trial court referred this motion to the administrative judge, and the motion

was denied as "untimely and facially insufficient."

87 of the Texas Family Code and that inadequate notice was provided under Section 87.003. *See* TEX. FAM.CODE ANN. §§ 87.001, 87.003 (West 2008). Although this Court has held the judgments signed September 29, 2010, and October 28, 2010, are "modified" judgments,[25] this Court has not held they were modifications within the meaning of, and subject to the provisions of, Chapter 87 of the Texas Family Code. We are not aware of any authority that Chapter 87 must be satisfied to modify a protective order under Rule 329b of the Texas Rules of Civil Procedure, in situations, within the plenary power of the trial court, in which there is no new evidence taken or a new hearing held. We believe that a trial court may modify a protective order over which it still has plenary power in the same manner as any other judgment. If the trial court's plenary jurisdiction had expired, Chapter 87 might apply depending on the circumstances. Because the trial court's plenary jurisdiction had not expired, the trial court could modify the judgment without complying with Section 87.003. The judgment signed October 28, 2010, was not a modification of an existing protective order within the meaning of Chapter 87—it did not include new substantive changes based on new evidence of changed conditions—rather, it was a modification of the protective order within the plenary power of the trial court, based on the original evidence and hearing—an important distinction.

▮▮▮▮ In addition, Kerri argues her due process rights were violated. Billy also agrees that a due process violation has occurred, reasoning that Section 87.003 of the Texas Family Code requires a hearing and that due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Kerri was provided with notice of the hearing in this cause, and the hearing provided Kerri an opportunity to be heard at a meaningful time and a meaningful manner. Because a trial court may modify a judgment while it still has plenary jurisdiction pursuant to Rule 329b of the Texas Rules of Civil Procedure, we conclude that the trial court was not required to hold an additional hearing to vacate, set aside, modify, or amend the judgment under that rule. Kerri has not established a violation of her due process rights.

But does Billy's "concession" that reversible error occurred require this Court to reverse the judgments of the trial court even in the absence of reversible error? Billy, the appellee, has not requested that we affirm the judgment of the trial court. Instead, Billy requests this Court to reverse the judgments of the trial court and remand for further proceedings. Ordinarily, a party is not entitled to relief which has not been requested. *See, e.g., Horrocks v. Tex. Dep't of Transp.,* 852 S.W.2d 498, 499 (Tex.1993); *In re Estate of Wilson,* 252 S.W.3d 708, 715 (Tex.App.-Texarkana 2008, no pet.). The Texas Supreme Court, though, has held "[a] reviewing court can reverse only when there is error in the judgment of the court below." *Davis v. Bryan & Bryan, Inc.,* 730 S.W.2d 643, 644 (Tex.1987); *Chrismon v. Brown,* 246 S.W.3d 102, 116 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In the absence of reversible error, we are prohibited from reversing the judgment of the trial court.

We overrule the motion for rehearing. We affirm the trial court's judgment.

---

**25.** *Culver,* 2011 WL 1136788, 2011 Tex.App. LEXIS 2236.